[Civil No. 3066. Filed November 16, 1931.]

[4 Pac. (2d) 905.]

PEPPERS FRUIT COMPANY, a Corporation, Appellant, v. F. A. CHARLEBOIS and JUANITA CHARLEBOIS, His Wife, Appellees.

Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Appellant.

Messrs. Phillips, Holzworth & Phillips and Messrs. McNabb & DeCamp, for Appellees.

LOCKWOOD, J.—F. A. Charlebois and Juanita Charlebois, his wife, hereinafter called plaintiffs, brought suit against Peppers Fruit Company, a corporation, hereinafter called defendant, to recover damages on account of the failure of defendant to comply with the terms of a certain contract hereinafter described. The case was tried to a jury, which returned a verdict in favor of plaintiffs for the sum

of $930, and after the usual motion for a new trial had been overruled, the matter was brought before us for review.

There are some eight assignments of error which we will consider in their order. The first is that the court erred in overruling defendant's demurrer to the complaint. This necessitates an examination of the complaint. It alleges substantially as follows: That about July 1st, plaintiffs were the owners of 160 acres of land in the Salt River Valley, of which they leased 120 to defendant under an agreement that the latter should buy and pay for the irrigation water used on such 120 acres of land according to the rules of the Salt River Valley Water Users' Association. It then continues:

"That in the spring and summer of 1929 the defendant, having used its portion of the water, which, under the rules of said Association, could be appropriated to said 120 acres, and being unable to buy any additional water by reason of the rules, usages and customs and regulations of the said Salt River Valley Water Users' Association, and the defendant having a cantaloupe crop which had begun to suffer for water, and was in great danger of being wholly destroyed, and burning up, for the lack of water, came to these plaintiffs and agreed with the plaintiffs that if the plaintiffs would permit it to use the water that was coming to the plaintiffs on the 40 acres retained, that it would pay for any crop injured or destroyed by reason of the fact that the water on said 40 acres had become exhausted *by use of it by the defendant.* That the plaintiffs, in order to save the cantaloupe crop of the defendant, and having an alfalfa crop on the said 40 acres, agreed with the defendant that it should take the water belonging to the said 40 acres, which the plaintiffs retained, upon the express condition that defendant would pay for any injury or loss of any crop, or part of crops, lost on the 40 acres retained by plaintiffs, by reason of the fact that *the water apportioned to said 40 acres was used by* defendant.

"That by reason of the *use of the water by the defendant,* the alfalfa crop on the said 40 acres was injured and destroyed, which 40 acres would have produced 62 tons of alfalfa hay more than it did produce if it had been watered as it could have been watered with the water delivered to defendant by said agreement, and the plaintiffs thereby lost 62 tons of hay by reason of the defendant using the water which the plaintiffs could have used on their alfalfa hay, which was worth, and was of the reasonable value of Fifteen Dollars ($15.00) per ton, or the total value of Nine Hundred Thirty Dollars ($930.00). . . . " (Italics ours.)

The complaint ends with the usual allegation of a demand for payment and the refusal of defendant to pay, and a prayer for damages.

It is the contention of defendant that the gist of the contract is the use of the water by it *on its cantaloupe crop,* and that plaintiffs having failed to allege that the water was all used *on such crop,* or that their hay was destroyed by reason of the use of the water on such crop, the damage occurred. We think the complaint does not rest upon the use of the water by defendant on the cantaloupe crop. The reference to that crop is merely an inducement stating the reason defendant desired to use the water. The contract was that defendant might use all of plaintiffs' water, and would pay for the crops destroyed by reason of such use, without any limitation of where or how the water should be used. The allegation follows that by reason of the use of plaintiffs' water by defendant the former's crops were damaged. We think the court properly overruled the demurrer.

The second assignment of error is that the court erred in refusing to instruct the jury to return a verdict for defendant at the close of plaintiffs' case because plaintiffs had failed to prove a breach of the contract or any damages. This assignment relies on the theory urged in support of the first assignment, to

wit, that the alleged agreement was to pay only in case defendant used plaintiffs' water on its cantaloupe crop. As we have indicated, the complaint does not limit the use of the water by defendant in that manner, and there was ample, and indeed conclusive, evidence in the record that defendant did use all plaintiffs' water, and sufficient to sustain the verdict that by reason thereof plaintiffs' alfalfa crops failed. The second assignment of error cannot be sustained.

The third assignment of error is that the following instruction was erroneous: "On the other hand, if you believe from the evidence that instead of the agreement which I have stated to you there was an agreement between the parties that Mr. Charlebois, the plaintiff, would give to the defendant *the water which he then had purchased for his premises,* and that the only consideration being that they would at all times leave sufficient water for him to properly irrigate his alfalfa crop, and that they did not agree to compensate him for any loss sustained, then your verdict should be for the defendant." (Italics ours.) Defendant urges that this submits to the jury a theory of defense which was not that urged by defendant or presented in its pleadings, and that such instruction was erroneous. Defendant's answer was merely a general denial, and its true defense was developed during the trial by the testimony of its manager, F. J. Hill. Hill testified as follows, in regard to his agreement with Charlebois:

"So I told Mr. Charlebois that I would be glad to go to town and purchase all the excess water that was coming to the ranch if he would permit me to throw the two buys together. 'Well,' he said, 'I don't want you to use all of this water and jeopardize my alfalfa crop.' I said, 'No; you have more excess water coming than I could possibly use for the cantaloupe crop, and I will protect you at all times and I will watch all the water my men use on the ranch

and I will watch the surplus and keep all the water you have need of to irrigate on through September and October,' which I did.

"Q. Now, as I understand your contract, then, with him was that you would use that excess water on your cantaloupe crop and for the purpose of irrigating your cantaloupe crop you would go ahead with the irrigation, *but would leave him sufficient to irrigate* his alfalfa crop? A. At the time that we were to throw these two buys together Mr. Charlebois said that he didn't want to let me have all the water and lose his hay, and I assured him that I would protect him fully all the way through."

The instruction was not happily worded, and of course defendant and not plaintiffs paid for the water in question, but such misstatement was not material, as it made no difference who paid for the water. Summed up, the testimony above quoted was to the effect that defendant agreed it would see that plaintiffs had all the water the latter needed to make their alfalfa crops. While the words "at all times" were not specifically used, the only reasonable conclusion from the testimony is that defendant must furnish irrigation water when it was needed, which is merely another way of saying "at all times" that were necessary. We think the jury could not have been misled by the instruction.

The fifth and sixth assignments of error go to the instructions in regard to the measure of damages. The court instructed the jury on that point as follows: "Now, the measure of damages in the event you should find the issues in favor of the plaintiffs and against the defendant, the ordinary measure of damages for a loss to a crop is the difference between what the crop produced, actually produced, brought and what the crop which might have been produced with the proper irrigation would have brought in the market less the cost of harvesting. You are instructed, however, that under the evidence in this case

that is not in evidence, and the measure of damages in this case, if you should find the issues in favor of the plaintiff, would be the value of the crop as it stood upon the field harvested, and I mean by that the market value.'' It will be noted that this instruction first states the usual measure of damages for loss of crops, and then lays down a special rule for the case at bar. It is urged that the special rule does not agree with that laid down by us in the case of *Beville* v. *Allen,* 28 Ariz. 397, 237 Pac. 184. It is apparently insisted by defendant that the court instructed the jury it should consider only the value of the crop as it stood upon the field harvested, and that since there was no evidence as to harvesting costs, the jury could not have had any basis upon which to determine such costs. The use of the word ''harvested'' was unfortunate, but in view of the undisputed evidence, we think it could not have misled the jury. It is of course true, as stated in *Beville* v. *Allen, supra,* that the usual measure of damages is the difference between the value of the probable crop at maturity and its actual value at that time, less the expense of preparing it for use or market. In the case at bar, however, the testimony was as to the value of the probable crop standing upon the ground, without any expense for marketing being considered. We think this was the proper rule under these circumstances. If there would be no expense incurred for marketing a crop, naturally no such expense would be deducted from the field value. While the instruction complained of may perhaps be technically erroneous in the use of the word ''harvested,'' we think the error could not have prejudiced defendant.

The seventh assignment of error is that the court permitted Juanita Charlebois to testify in regard to the use by defendant of part of the water in question on a crop other than cantaloupes. This is disposed

of by our ruling that the agreement pleaded and proved by plaintiffs was not for use on cantaloupes alone, but for general use of the water. Such being the case, it was certainly permissible to show that defendant had used the water.

The eighth assignment was that the court erred in giving the following instruction: "Now, if you believe from the evidence in this case, from a preponderance of the evidence, that the plaintiffs and the defendant, through its agent manager, Mr. Hill, entered into an agreement during the month of June of 1929 that the water then due upon the forty acres of alfalfa being farmed by the plaintiff should be diverted from the alfalfa crop to the cantaloupe crop then being cultivated by the defendant company, and that the defendant through said agent, Mr. Hill, then and there agreed to pay the plaintiff any damage which he might sustain as a result of a lack of water and consequent loss of alfalfa crop grown upon the premises, and you further believe from a preponderance of the evidence that there was a loss of alfalfa crop as a result of lack of water, and in compliance with the provisions of said verbal agreement, then I instruct you that your verdict should be for the plaintiffs and against the defendant in such sum as you may believe from the evidence that the loss in the production of the alfalfa crop upon said premises amounted to." This instruction, must, of course, be construed with the other instructions in regard to the measure of damages. So construed, we think, if there was any error therein, it was rather in favor of defendant than of plaintiffs, in that it might be construed as limiting the use of water to the cantaloupe crop, which, as we have stated, is not in accordance with plaintiffs' complaint and evidence. Defendant certainly cannot complain on this account.

We have examined the entire record and the reporter's transcript with care. While we cannot commend the language of the instructions as being well chosen, yet upon the whole case we think the jury was properly advised of the essential issues, and that any fair-minded person would be convinced that plaintiffs at defendant's request, and for the latter's benefit, allowed it to use certain water belonging to plaintiffs; that by reason of such use by defendant plaintiffs were actually damaged through the loss of two alfalfa crops; and that there is evidence in the record, though perhaps meager, from which the jury might reach the conclusions they did in regard to the amount of damages.

Such being the case, the judgment of the trial court is affirmed.

McALISTER, C. J., and ROSS, J., concur.